FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2016 MAR 30 PM 3: 25

CLERK_____
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

LARA ELLER,                    )
                               )
        Plaintiff,             )
                               )
v.                             )        CASE NO. CV414-202
                               )
CAROLYN W. COLVIN,             )
                               )
        Defendant.             )
_____)

## O R D E R

Before the Court are Defendant's Motion to Strike Certain Paragraphs of Plaintiff's Amended Complaint (Doc. 40), Defendant's Second Motion for Partial Dismissal (Doc. 41), Defendant's Motion for Summary Judgment (Doc. 45), Plaintiff's Motion for Oral Argument (Doc. 58), Defendant's Motion to Strike Plaintiff's Statement of Facts (Doc. 66), and Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Statement of Facts (Doc. 73). As an initial matter, Defendant has withdrawn (Doc. 71) its Motion to Strike (Doc. 66) which is accordingly, **DISMISSED AS MOOT.** Furthermore, the Court finds no reason to strike Defendant's response to Plaintiff's Statement of Facts. Defendant has otherwise complied with all filing deadlines and no local rules prohibit such a response. As a result, Plaintiff's Motion to Strike (Doc. 73) is **DENIED**.

For the following reasons, Defendant's Motion for Summary Judgment (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**; and Defendant's Motion to Strike Certain Paragraphs of Amended Complaint (Doc. 40), Motion for Partial Dismissal (Doc. 41), and Plaintiff's Motion for Oral Argument (Doc. 58) are **DISMISSED AS MOOT**. This case will proceed to trial.

## BACKGROUND

This case arises from a complaint of discriminatory promotion at the Savannah Hearing Office of the Social Security Administration's ("SSA") Office of Disability Adjudication and Review ("ODAR"). Plaintiff, a white female, began working at ODAR in March 2008 as a Senior Case Technician ("SCT"). (Doc. 38 at 5.) Prior to working at ODAR, Plaintiff was a disability adjudicator for the Georgia Disability Determination Services ("DDS"). (Doc. 57 at 17.) Plaintiff's duties as a SCT included supporting ODAR's Administrative Law Judges ("ALJs") and some scheduling responsibilities. (Doc. 55 at 3.) Plaintiff was also known for her knowledge and experience in SSA adjudication, and ALJs often called upon her to discuss complex issues. (Doc. 39 at 7.) In addition to her duties as a SCT, Plaintiff became a National Legal Assistant Instructor and National Legal Assistant Cadre, which involved traveling for training purposes. (Id.) Generally, Plaintiff's yearly performance appraisals were

positive with Plaintiff achieving an average score of four out of five on the ODAR rating system. (Doc. 45, Attach. 5 at 5.)

When she was hired by ODAR, Plaintiff's supervisor—Hearing Office Director Brian Boyd—discussed with her the possibility of becoming a Paralegal Specialist as a promotion from SCT. (Doc. 55, Attach. 2 at 44-45.) The role of Paralegal Specialist was different from the role of a SCT. The role required Plaintiff to "write decisions that are ultimately signed and issued by the ALJ's." (Doc. 55 at 3.)

In March 2013, SSA announced that there was an opening for a Paralegal Specialist in Plaintiff's office. Jamie Stewart—another Group Supervisor—told Plaintiff that Ms. Stewart, Mr. Boyd and Judge Petersen—the Hearing Office Chief Administrative Law Judge and senior supervisor for Plaintiff—intended for Plaintiff to receive the position. (Id. at 6.) Plaintiff applied for the position expecting a positive outcome as a result of these conversations. In addition to completing the required application, Plaintiff also submitted several letters of support from ALJ's for whom she worked. (Id. at 23.)

The selection for the Paralegal Specialist position was designed to be competitive and non-conscious of race. (Doc. 55, Attach. 2 at 105.) Judge Petersen was to make the final promotion decision. Plaintiff, along with several other individuals from the Savannah office, including an African-

American named Kareen Alvin, was placed on the Merit Promotion Certificate of Eligibles from which Judge Petersen was entitled to select the candidate for promotion. (Doc. 45, Attach. 13 at 27-8.) Judge Petersen did not conduct interviews for the position, but rather reviewed the applications and considered the candidates' work experience, qualifications, language arts skills, ability to relate to others, ability to learn the position, and ability to become a productive writer with a short learning curve. (Doc. 45, Attach. 9 at 3-5; Doc. 55 at 8.) He also spoke with Mr. Boyd, who was the second-line supervisor to both Plaintiff and Ms. Alvin.[1] (Doc. 45, Attach. 9 at 2.)

Ultimately, Judge Petersen selected Ms. Alvin for the position. After Plaintiff did not get the promotion and received unsatisfactory answers about why she was not promoted, she filed an EEO ("Equal Employment Opportunity") complaint[2] on September 18, 2013. (Doc. 57 at 30.) In her complaint, Plaintiff alleged race discrimination due to the fact that she was not promoted and claimed that she suffered from retaliation for her

---

[1] Defendant also claims that Judge Petersen spoke with Sidney Sherman, Plaintiff's first-line supervisor; however, Mr. Sherman does not remember being part of the process. (Doc. 45, Attach. 2 at 2; Doc. 55, Attach. 3 at 104.)

[2] Federal agencies maintain an EEO Office where their employees may file complaints of discrimination because of race, color, religion, sex, national origin, age, disability or genetic information. U.S. Equal Employment Opportunity Commission, Title VII of the Civil Rights Act, (March 14, 2016 11:10 AM), http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm.

complaint. (Doc. 45 at 1.) Over the next few months, Plaintiff and Defendant engaged in substantial discovery as to why Ms. Alvin was selected rather than Plaintiff.

When first asked why he selected Ms. Alvin, Judge Peterson stated that the selection was made based on the belief that Ms. Alvin had better communication and language skills, would be a swift learner based on her performance, and on a consensus of office management. (Doc. 55, Attach. 1 at 5.) Judge Petersen later filed an affidavit where he stated that Ms. Alvin was more qualified because she had greater "work experience, language arts skills, ability to interact with others, . . . [was more] productiv[e] as a SCT and demonstrated [an] ability to learn a new position within a short learning curve." (Id. at 13.) Furthermore, Judge Petersen reasoned that Ms. Alvin's master's degree further bolstered her qualification for the position by indicating that she had superior analytical and writing skills. (Doc. 45, Attach. 8 at 4.) Mr. Sherman noted that Plaintiff did not outperform other workers although Ms. Stewart believed Plaintiff to be generally productive. (Doc. 45, Attach. 2 at 3; Doc. 45, Attach. 20 at 3.)

In a later deposition, Judge Petersen added an additional reason for his decision. He stated that, Plaintiff was often absent and had significant leave balances (Doc. 57 at 15.) Judge

Petersen had observed that Plaintiff was often out of the office[3] and that he was concerned that her co-workers resented her absence as they often covered her work when she was gone. (Doc. 45, Attach. 8 at 3.) Likewise, Mr. Boyd noted that there were "attendance/leave issues". (Doc. 45, Attach. 18 at 9.) Judge Petersen also expressed concern that Plaintiff assumed unnecessary responsibilities and that this negatively affected her job performance. (Doc. 45, Attach. 8 at 3.) Acknowledging that Plaintiff had significant training experience due to her position as a national cadre trainer, Judge Petersen discounted this experience because he did not believe that it would assist Plaintiff in performing her duties as a Paralegal Specialist. (Id. at 4.) Judge Petersen also stated that he was unaware of Plaintiff's position as a decision writer for DDS and, as a result, this did not affect the promotion decision.[4] (Doc. 45, Attach. 19 at 8.)

Plaintiff disagrees with Judge Petersen's characterization of the promotion decision. She argues that she was well qualified for the position citing to her receipt of performance based awards in 2009, 2010, 2011 and 2012 (Doc. 55, Attach. 1 at

---

[3] Notably, there is no evidence that Plaintiff's leave was unapproved. (Doc. 45, Attach. 19 at 6.)
[4] Mr. Boyd also noted that the decisions Plaintiff wrote for DDS are not functionally equivalent to the decisions she would have written had she been promoted to Paralegal Specialist. (Doc. 55, Attach. 2 at 44-45.)

55) along with her excellent drafting skills (Doc. 55 at 20). She notes that Mr. Boyd considered her "the strongest SCT" in the office (Doc. 55, Attach. 2 at 60) and that her knowledge and expertise were regularly relied on both by other staff and the ALJs for whom she worked. (Id. at 93.)

Plaintiff provides another reason for Ms. Alvin's promotion. Plaintiff argues that Judge Petersen selected an African-American of lesser qualifications for the Paralegal Specialist position because of racial tension in the office. (Doc. 57 at 25-28.) Plaintiff claims that Ms. Alvin's selection was an attempt to smooth the waters after racial tension in the office was exacerbated in May 2013 when a white individual replaced an African-American individual in a supervisory position. (Id. at 26.)

While Judge Petersen testified that he did not feel there was any racial tension in the office (Doc. 45, Attach. 19 at 11), this position was not shared by all. For example, Mr. Boyd noticed that there were morale issues, although he did not attribute them to racial tension. (Doc. 45, Attach. 18 at 6.) Mr. Boyd also acknowledged that he may have told Plaintiff that other employees resented her because of her race and DDS experience. (Id. at 21.) Marilynn Ellison, who worked at the Savannah office from 1993 to 2012, was aware of "a lot of incidents that involved racial friction," (Doc. 55, Attach. 3 at

24, 25, 29, 33) and that Plaintiff was referred to as the "white bitch" by certain coworkers (id. at 34-36). Ms. Stewart also admitted that she expected backlash following any promotion and noted that some Senior Case Technicians "don't really like" Plaintiff. (Id. at 120.) More importantly, however, both Mr. Boyd and another ALJ, Judge Gold, acknowledged that race was occasionally a factor in both employment and discipline decisions. (Doc. 55, Attach. 2 at 98; Doc. 55, Attach. 3 at 55.)

After Plaintiff had filed her EEO complaint but before she had filed this case, Plaintiff learned in September 2013 that she had been awarded a Commissioner's Team Citation in recognition of her work as a national cadre trainer. (Doc. 45, Attach. 5 at 3.) Plaintiff complains that she did not receive any formal recognition for this award. (Doc. 57 at 29.) She argues that recognition for her award was discussed in a staff meeting, but the idea was rejected because of her complaint.[5] (Doc. 55, Attach. 2 at 63.) Plaintiff notes her office had recognized two other individuals for awards similar to Plaintiff's—once when an employee received the same award, and

---

[5] ALJ Richard Furcolo suggested honoring Plaintiff, but Mr. Boyd told him that there was "some kind of back story" that prohibited public affirmation of the award. (Doc. 55, Attach. 3 at 48.)

once when Ms. Alvin received her master's degree.[6] (Doc. 45, Attach. 5.)

In lieu of such recognition, Ms. Stewart offered to send an email to the Savannah Hearing Office congratulating Plaintiff on her award. Plaintiff, however, declined. (Id. at 3.) She also indicated that she had no interest in any further recognition. (Id.) Nevertheless, the ODAR national office sent an email to its staff announcing the award. (Doc. 45, Attach. 10 at 4.) In addition, the regional office also sent an email. (Id.) Moreover, at least one ALJ sent an email congratulating Plaintiff. (Id.) Judge Petersen did not receive any certificate to present to Plaintiff and was unaware of any further requirement to recognize Plaintiff's achievement. (Doc. 45, Attach. 19 at 11.)

Plaintiff also alleges that she received a lowered performance appraisal score in October 2013. (Doc. 39 at 19-20.) In that performance appraisal, Plaintiff received an average of "4". (Doc. 45, Attach. 24 at 3.) Janet Bruce, who conducted the appraisal, based her decision upon her own observance of Plaintiff while under Ms. Bruce's supervision, and on the written reports of Plaintiff's previous supervisor. (Id.) Ms. Bruce indicated that she believed the report was accurate at the

---

[6] Staff members independently organized the recognition of both other individuals. (Doc. 45, Attach. 18 at 23.)

time the evaluation was conducted. (Id.) Plaintiff, however, disagreed with the rating and filed a grievance, asserting that she should have received a rating of "5". (Id. at 4.) After further discussion, Ms. Bruce granted the grievance due to the lack of documentation supporting the lower score. (Id.) Ms. Bruce testified that she was not aware of Plaintiff's EEO complaint.[7] (Id. at 4.)

Finally, Plaintiff alleges she received an inappropriate reprimand letter during litigation of this case. (Doc. 39 at 19-20.) At a March 19, 2015 deposition of Mr. Boyd (Doc. 55 at 32), Plaintiff introduced a compilation of documents which contained the unredacted names, and other identifying information, of SSA employees (Doc. 45 at 33). Plaintiff did not receive these documents through the discovery process, but instead removed them from the ODAR office without permission. (Id.) Following this disclosure, Plaintiff was counseled by Ms. Bruce with a reminder that she may not remove such documents without prior approval. (Doc. 45, Attach. 24 at 4-5.) The reminder stated that it was not intended as a disciplinary letter and that it would have no effect on Plaintiff's employment. (Id.)

Plaintiff filed a complaint on September 16, 2014 alleging claims of race discrimination and unlawful retaliation in

---

[7] Ms. Bruce became Plaintiff's first-line supervisor in August 2013 following Mr. Sherman's departure from the office. (Doc. 45, Attach. 24 at 2.)

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and the Civil Rights Act of 1866, 42 U.S.C. § 1981. (Doc. 1.) On July 10, 2015, this Court entered an order granting in part Plaintiff's Motion to Dismiss. (Doc. 36.) In that order, the Court dismissed Plaintiff's claim for relief under 42 U.S.C. § 1981 and struck Plaintiff's claims of retaliation as an impermissible shotgun pleading. (Id. at 1-2.) However, the Court granted Plaintiff leave to amend her complaint only to cure the defect in her retaliation claims. (Id.) Plaintiff filed an amended complaint on July 28, 2015 alleging race discrimination under Title VII because she did not receive a promotion and unlawful retaliation under Title VII for when she was not properly acknowledged for the receipt of a prestigious award, received a lower performance evaluation, and was chastised for the removal of SSA documents. (Doc. 39.) Defendant has filed a Motion to Strike Certain Paragraphs Plaintiff's Amended Complaint (Doc. 40) on the basis that the amended complaint is "immaterial, impertinent, or scandalous" (id. at 1-2) and a Second Motion to Dismiss (Doc. 41) alleging that Plaintiff's retaliation claims fail to state a claim. In the alternative, Defendant claims that Plaintiff's complaint is without merit and asks this Court for summary judgment. (Doc. 45 at 38.)

**ANALYSIS**

I.   <u>SUMMARY JUDGMENT STANDARD</u>

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u> The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (<u>quoting</u> Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. <u>DeLong Equip. Co. v. Wash. Mills Abrasive Co.</u>, 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the
> initial responsibility of informing the district
> court of the basis for its motion, and identifying

> those portions of the pleadings, depositions,
> answers to interrogatories, and admissions on file,
> together with the affidavits, if any, which it
> believes demonstrate the absence of a genuine issue
> of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. RACIAL DISCRIMINATION IN PROMOTION

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such

13

individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs asserting claims for failure to promote absent direct evidence[8] "carry the initial burden under the statute of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). In the failure-to-promote context, "plaintiff may demonstrate that [s]he is a member of a protected class and that [s]he was qualified and applied for the promotion but was rejected despite his qualifications in favor of an equally or less qualified employee who was not a member of the protected class." Jefferson v. Burger King Corp., 505 F. App'x 830, 833 (11th Cir. 2013) (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004)). "In order to make a valid comparison, the plaintiff must show that [s]he and the

---

[8] " 'Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact at issue without inference or presumption . . . [and] is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (quoting Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999)). Here, Plaintiff has conceded that in analyzing her case this Court should apply the burden shifting analysis of McDonnell Douglas. This Court questions whether some of the statements made by Defendant employees including Mr. Boyd's acknowledgement to Ms. Ellison that race was "on my mind" and that there would be "a deep racial divide, even worse than it currently was, if a non-African-American was placed into the [Group Supervisor position]" qualify as direct evidence. (Doc. 55, Attach. 3 at 27.)

comparator are similarly situated in all relevant respects." Id.
(citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.
1997.)) "Once these elements are established, the defendant has
the burden of producing a legitimate, non-discriminatory reason
for the challenged employment action." Denney v. City of Albany,
247 F.3d 1172, 1183 (11th Cir. 2001) (citing Holifield, 115 F.3d
at 1564).

Following a successful production of a legitimate non-
discriminatory reason for the promotion, the burden shifts back
the plaintiff to prove that the proffered reason was mere
pretext. See Holifield, 115 F.3d at 1565. "[T]o show pretext,
the plaintiff must show that a proffered reason is false."
Manigault v. Comm'r, Social Sec. Admin., 609 F. App'x 982, 986
(11th Cir. 2015) (citing Brooks v. Cnty. Comm'n, 446 F.3d 1160,
1162-63 (11th Cir. 2006)). A plaintiff "may succeed in this
either directly by persuading the court that a discriminatory
reason more likely motivated the employer or indirectly by
showing that the employer's proffered explanation is unworthy of
credence." Brooks, 446 F.3d at 1163 (citing Jackson v. Ala.
State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005)). When
a plaintiff alleges pretext, she "must show not merely that the
defendant's employment decisions were mistaken but that they
were in fact motivated by a [discriminatory factor]." Brooks,
446 F.3d at 1163 (citing Alexander v. Fulton Cnty., 207 F.3d

1303, 1339 (11th Cir. 2000)). Proof of a plaintiff's superior qualifications may be a sign of pretext if the "the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.' " Brooks, 446 F.3d at 1163 (citing Cooper v. S. Co., 390 F.3d 695, 732 (11th Cir. 2004). Furthermore, evidence of a mistake by an employer is not pretext unless a plaintiff "show[s] that the employer did not give an honest explanation for its behavior." Keaton v. Cobb Cnty., 545 F. Supp. 2d 1275, 1296 (N.D. Ga. 2008). Finally, a "plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." Alexander, 207 F.3d 1303, 1229 (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1542 (11th Cir. 1997) (overruled on other grounds). A plaintiff must produce "significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993).

However, the McDonnell Douglas framework is only a tool. "The 'ultimate question' in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but 'whether the defendant intentionally

discriminated against the plaintiff.' " Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1184 (11th Cir. 1984) (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)).

In this case, Defendant concedes that Plaintiff can prove a prima facie case of race discrimination based on a failure to promote. (Doc. 45 at 17.) Namely, Plaintiff is a member of a protected class, applied for a position, and was rejected in favor of an individual who is not a member of the protected class. Likewise, Plaintiff agrees that Defendant has articulated legitimate non-discriminatory reasons for the selection of Ms. Alvin over Plaintiff (Doc. 57 at 4): (1) Ms. Alvin would be a quick learner for the new position (Doc. 45 at 18); (2) Ms. Alvin was more productive than Plaintiff (id.); (3) Ms. Alvin had a Master's degree and Plaintiff did not (id. at 19); (4) Plaintiff assumed responsibility inappropriately (id.); and (5) appointing Plaintiff to the position would result in lower office morale because other employees had to take on Plaintiff's SCT workload (id.). As a result, the only remaining issue before the Court is whether Defendant's stated reasons for hiring Ms. Alvin rather than Plaintiff were mere pretext.

A. Factors Supporting Ms. Alvin's Selection Over Plaintiff

     1. *Productivity, Volume of Workload, Timeliness, and Education*

Plaintiff alleges that Defendant's argument that Ms. Alvin was more productive than Plaintiff is mere pretext. (Doc. 57 at 10.) Plaintiff points to several pieces of evidence discounting Defendant's argument. Namely, Plaintiff notes that language in her evaluations stated that she was productive and recognized her strong drafting ability. (Id.) She also notes that management selected her to train two new ALJs indicating that her supervisors believed that she was capable of handling an increased workload. (Id. at 12.) Furthermore, she received several letters of recommendation supporting her application for the paralegal position, and was told that she was the "clear selection choice." (Id. at 9.)

While these facts certainly indicate that Plaintiff stayed busy and was highly regarded by some members of the ODAR office, Plaintiff has not produced evidence that Defendant's concern about her productivity and workload was unreasonable. First, both Mr. Boyd and Ms. Stewart indicated that Ms. Alvin was more productive than Plaintiff, (Doc. 68 at 22) and Mr. Sherman had disciplined Plaintiff for past performance issues (Doc. 68 at 23; Doc. 45, Attach. 2 at 2). Second, Plaintiff's strong drafting skills and training obligations do not rebut

Defendant's stated concerns about her time management skills. Moreover, Judge Petersen did not consider the training to be relevant to the position. (Doc. 45, Attach. 8 at 4.) Likewise, while the letters of recommendation reflected positive attributes of Plaintiff, they were not reviewed by Judge Petersen because ALJs were not involved in hiring and promotion decisions. (Doc. 55, Attach. 3 at 93.)

Plaintiff's reliance on the language of her performance evaluations is also problematic. Her performance evaluation states that Plaintiff was "producing her fair share of work according to supervisory expectations." (Doc. 45, Attach. 2 at 3.) This indicates that Defendant's proffered statement that Plaintiff had productivity issues was false. However, further evaluation of the evidence presented makes such a conclusion unreasonable. Specifically, the cited language does not indicate that Plaintiff was more than or even equally as productive as Ms. Alvin. Mr. Sherman noted that the stock language in Plaintiff's evaluation was suggested for inclusion in the evaluations of all employees receiving a rating of "3" or higher. (Id.) As a result, this language "did not imply [Plaintiff] was participating or achieving business results at

an exceptional rate, and she certainly was not outperforming other senior case technicians." (Id.)[9]

### 2. *Plaintiff's Inappropriate Assumption of Duties*

Plaintiff claims that she did not "assume responsibilities inappropriately" (Doc. 57 at 11), rather she states that her co-workers sought her out because of her expertise and experience (id.). She cites to Judge Petersen's inquiries of her about legal issues and the proper steps for a complex case (id. at 12), as well as her selection to train two additional ALJs who had no prior experience with disability adjudication (id.), as evidence that she merely assumed the duties asked of her by her superiors and co-workers. The Court agrees with Plaintiff that Defendant's reasoning here is suspect. Defendant has proffered no evidence that Plaintiff assumed duties other than those requested of her or for which she receive both approval and awards. Absent evidence that Plaintiff assumed duties which were not required of her or otherwise lauded by Defendant a reasonable jury would be entitled to conclude that Defendant's proffered justification is mere pretext.

---

[9] Finally, Plaintiff provides no justification for why it was inappropriate to credit Ms. Alvin's master's degree over hers. While it was not a requirement for the promotion it did indicate that Ms. Alvin had significant writing skills. (Doc. 45 at 3.) As a result, this factor cannot be used by Plaintiff to show evidence of pretext.

### 3. *Office Morale*

Defendant was, however, entitled to rely on concerns about office morale when making a decision on whom to promote. Defendant alleged that Ms. Stewart and Ms. Bruce received complaints from other SCT's about having to complete Plaintiff's work due to her frequent absences and that Plaintiff was not friendly with other members of her office. (Doc. 68 at 26.) Plaintiff has provided no evidence rebutting this concern. Moreover, she has openly acknowledged the fact that some of her co-workers disliked her in seeking to prove racial animus in her office. (Doc. 57 at 26.) While it is accurate that some of the dislike came from Plaintiff's non-white coworkers, this is not evidence of pretext or an otherwise unlawful consideration. It is not a violation of Title VII for an employer to consider a non-racial characteristic of the employee, in this case Plaintiff's relationship with her co-workers, even if such consideration may have a tenuous racial component. See Chapman v. AI Transp., 229 F.3d 1012, 1035 (11th Cir. 2000) ("Just because a sought after trait is linked by stereotype to an impermissible consideration does not mean an employer cannot search for and consider the trait itself independently from the stereotype."). As a result, Defendant was entitled to consider morale when making the promotion decision.

B. Qualification Disparity

Plaintiff also claims that her qualifications were so significant that Defendant would not have selected Ms. Alvin for the position except for her race. (Doc. 57 at 16.) While such a showing may provide evidence of pretext, it is not sufficient for Plaintiff to simply "show[] that she is more qualified than [Ms. Alvin]." Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). Plaintiff may support a claim of pretext based on disparate qualifications only if "no reasonable person would have selected [Ms. Alvin] over her." Higgins v. Tyson Foods, Inc., 196 F. App'x 781, 783 (11th Cir. 2006). Here, the Court determines that Plaintiff cannot make such a showing. While Plaintiff may have appeared superior on paper, a closer evaluation shows that Plaintiff and Ms. Alvin were not so different. First, Plaintiff had a lower average performance rating than Ms. Alvin. (Doc. 55, Attach. 1 at 114.) Second, the work experience in DDS upon which Plaintiff relies to show that she had greater writing skills than Ms. Alvin was not considered "functionally equivalent" to the work she would do as a Paralegal Specialist. (Doc. 68 at 28; Doc. 67, Attach. 6 at 8.) Third, her training experience, while positive and for which she was appropriately congratulated, was not relevant to a promotion as there was no crossover in work experience. (Doc. 45, Attach. 8 at 4.) Additionally, Plaintiff's supervisors had disciplined

her in the past for performance issues. (Doc. 68 at 23; Doc. 45, Attach. 2 at 2.) While Plaintiff had been with the office longer than Ms. Alvin, Ms. Alvin had a master's degree requiring extensive and complex writing skills, no cited productivity issues, some experience with medical terminology and higher evaluation scores over the time she had been with ODAR. There simply is not enough support for Plaintiff's allegation that no reasonable person would have selected Ms. Alvin over her.

    C. Judge Petersen's Explanations for the Promotion Decision

Plaintiff alleges that three inconsistencies in Judge Petersen's explanation for the promotion decision are evidence of pretext. First, Plaintiff alleges that Judge Petersen did not accurately disclose who was involved in the promotion decision. (Doc. 57 at 6-7.) Defendant acknowledges that there is the possibility that Judge Petersen was mistaken in citing a "consensus of management" in the decision making process. (Doc. 68 at 10.) However, the Court cannot find in this sole argument any evidence of racial bias. Nothing in this argument rebuts the legitimate non-discriminatory reasons given for why Ms. Alvin was selected over Plaintiff. Rather, it is merely a weak issue of fact which maintains a tenuous relationship with the actual promotion decision. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) (summary judgment appropriate when there is only "weak issue of fact as to whether the employer's

reason was untrue."). Moreover, Judge Petersen's mistaken recollection of who was involved in the decision is not sufficiently suspect for a reasonable jury to conclude that there is evidence of pretext. A point made clear when considering that, while Ms. Stewart may not have been in the room when Judge Petersen made the selection, Ms. Stewart did speak with Judge Petersen about Plaintiff in the ordinary course of business. (Doc. 45, Attach. 20 at 3.)

Second, Plaintiff argues that Defendant provided shifting explanations for the promotion decision throughout the course of this dispute. (Doc. 57 at 8.) Namely, Judge Petersen's first explanation of the promotion decision cited Ms. Alvin's "better communication and language skills" and "demonstrated . . . ability to learn a new job in a short timeframe." (Id. at 13.) In a later affidavit, Judge Petersen claimed that Ms. Alvin's selection was based on "work experience, language arts skills, ability to interact with others, her productivity as a SCT, and demonstrated ability to learn a new position within a short learning curve." (Id.) Finally, Judge Petersen stated in a deposition that Plaintiff's leave affected the decision. (Id. at 15.)

"[A]n employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." Hurlbert v. St. Mary's Health Care Sys.,

Inc., 439 F.3d 1286, 1299 (11th Cir. 2006). However, "an additional, but undisclosed, reason for an employment decision does not establish pretext." Keaton, 545 F. Supp. 2d at 1305 (citing Tidwell v. Carter Prods., 135 F.3d at 1428). Moreover, employers are allowed to provide additional context for their employment decisions. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332 (11th Cir. 1988). Although Judge Petersen did elaborate on the reasons for Plaintiff's non-promotion, there is no evidence that he provided contradicting justifications for his decision or that he has retracted any of his initial reasons. See Johnson v. Nordstrom, Inc., 260 F.3d 727, 733-74 (7th Cir. 2001) (no pretext where employer "simply supplemented its explanations in the context of EEOC charges and litigation" and there was otherwise no retraction or inconsistent reasons). Accordingly, the Court concludes that there is no evidence of pretext.

Finally, Plaintiff alleges that Defendant deviated from its own policy prohibiting the use of leave balances in promotion decisions when Judge Petersen concluded that Plaintiff's leave balances would affect her productivity. (Doc. 57 at 16.) SSA policy states that "employees will not be adversely affected in any employment decision solely because of their leave balances." (Doc. 68 at 16.) (Emphasis added.) While it is accurate that deviating from policy can sometimes provide evidence of pretext,

there is no indication that Defendant deviated from its stated policy here. Hurlbert, 439 F.3d at 1299; see contra Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1350 (11th Cir. 2007) (noting that even where policies are violated "it does not necessarily indicate racial discrimination."). The SSA has proffered evidence that leave balances may be part of a wholistic evaluation for promotion decisions without violating the terms of the policy. (Doc. 30, Attach. 1; Doc. 68 at 16-17.) This Court does not stand in judgment of how the SSA interprets its own rules. See Nix, 738 F.2d at 1187 ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."). In this case, there is no evidence that Plaintiff's leave balances were the sole reason for her non-promotion. As a result, the alleged use of leave balances in the promotion decision cannot act as evidence of pretext.

### D. Evidence of Racial Bias

Finally, Plaintiff cites repeatedly to what she alleges was "racial tension" in the office where she worked. (Doc. 57 at 25.) She claims that this tension impermissibly affected the promotion decision. (Id.) Specifically, Plaintiff notes that some of her co-workers called her the "white bitch." (Doc. 55, Attach. 3 at 34-36.) She also claims that Ms. Ellison, an employee who had worked in a management capacity at the Savannah

SSA office until May of 2012, handled many problems related to "incidents that involved racial friction" and "hostile working environment."[10] (Doc. 57 at 26; Doc. 55, Attach. 3 at 18-20.) Plaintiff also alleges that replacing the only African-American group supervisor in the Savannah office with a white supervisor exacerbated this racial tension. (Doc. 57 at 26-27.) Notably, Plaintiff claims that Mr. Boyd spoke with Ms. Ellison and claimed that there would be "a deep racial divide, even worse than it currently was, if a non-African-American was placed into [the Group Supervisor position]." (Doc. 55, Attach. 3 at 27.) Moreover, Judge Gold also noted that race played a role in office decisions although he did not testify that "race impermissibly played a factor" in Ms. Alvin's hiring. (Doc. 67, Attach. 4; Doc. 68 at 7.)

However, Plaintiff has not proffered any evidence that Judge Petersen was aware of racial tension in the Savannah office. Ms. Ellison had left the Savannah office before Judge Petersen joined so her belief about the presiding racial feeling is too distant in time to attribute it to Judge Petersen's promotion decision. Additionally, while Judge Petersen spoke with one of the employees who expressed dissatisfaction with the replacement of the only African-American management employee, he testified that the concern was related only to members of

---

[10] Plaintiff does not make a hostile work environment claim here.

management, thus the concern had no effect on the decision to hire Ms. Alvin as a Paralegal Specialist as it was not a management position. (Doc. 67, Attach. 2 at 28; Doc. 68 at 3.)

Generally, Courts look to the decision maker's use of race when determining whether such use was impermissible. See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010.) However, the beliefs of other individuals involved in the process are also valid. Hammett v. Sec'y, Dept. of Homeland Sec., 488 F. App'x 405, 406 (11th Cir. 2013) (recognizing influence of non-decisionmaker under a "cat's paw" theory in Title VII cases). Here, despite Judge Petersen's apparent lack of knowledge of racial tension in the office, he did consult with others who were aware of racial tension. Mr. Boyd, acknowledged concerns about possible racial issues arising from some promotion decisions, and acknowledged the implication of race in certain managerial decisions. (Doc. 55, Attach. 2 at 98.) Furthermore, Ms. Stewart told Plaintiff that Ms. Stewart, along with Mr. Boyd and Petersen wanted Plaintiff to have the Senior Paralegal position suggesting that, at one time, Judge Petersen also believed that Plaintiff was entitled to the position. (Doc. 55 at 6; Doc. 56 at 4.) There is therefore, a question of material fact whether Mr. Boyd's belief of racial bias in the workplace affected the decision to promote Ms. Alvin. While Plaintiff has not rebutted all of the proffered

justifications for promoting Ms. Alvin rather than Plaintiff, she has provided some evidence that race may have impermissibly affected the promotion decision. Nix, 738 F.2d at 1184 ("The 'ultimate question' in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" (quoting Aikens, 460 U.S. at 715)). This is further bolstered by Plaintiff's evidence that at least one of the proffered reasons for Ms. Alvin's promotion—Plaintiff's purported assumption of inappropriate duties—is not accurate. As a result, Defendant's motion for summary judgement as to Plaintiff's Title VII claim of discrimination in promotion is **DENIED**.[11]

## III. RETALIATION

Plaintiff has filed an amended complaint alleging that Defendant retaliated against her for filing her EEO complaint.

---

[11] Plaintiff also alleges that the fact she was not properly lauded for receiving a prestigious national award is evidence of pretext in the hiring decision. However, Plaintiff admits that there was no formal requirement for management to acknowledge her and also specifically told individuals not to recognize her when news of her award became public knowledge. (Doc. 45, Attach. 5 at 3.) Likewise, news of the award came several months after Plaintiff had failed to receive the promotion at issue and also after Plaintiff had filed her claim for discrimination in promotion. Plaintiff provides no evidence of a relationship between the lack of recognition of the award and her failed promotion. Accordingly, this evidence does not support Plaintiff's claim for discrimination in promotion.

(Doc. 39 at 18.) In particular, Plaintiff alleges that (1) she was denied recognition for a nationwide award; (2) received lower and inaccurate ratings in her performance appraisal written after her EEO complaint; and (3) received an undeserved disciplinary write-up. (Id.) Plaintiff claims that these actions were taken in retaliation for Plaintiff's EEO Complaint. (Id.)

## A. Defendant's Motion to Strike and Motion to Dismiss

As an initial matter, Defendant has raised two objections to Plaintiff's amended complaint's charges of retaliation. This Court previously granted Defendant's prior Motion to Dismiss (Doc. 10) striking Plaintiff's claims for employment discrimination under 42 U.S.C. § 1981 and retaliation under Title VII. (Doc. 36.) However, this Court granted Plaintiff leave to amend her claims of retaliation, which had been dismissed as a shotgun pleading. (Doc. 36.) Plaintiff filed an Amended Complaint on July 28, 2015. (Doc. 39.) In addition to providing the requested detail for her retaliation claim, Plaintiff also provided further factual detail for her claim of race discrimination as well as adding a new allegation of retaliation based on post-complaint actions by Defendant. (Id. at 20.) Defendant has filed a motion to strike these two new portions of Plaintiff's amended complaint. (Doc. 40.) Defendant argues that these additional allegations are impertinent or scandalous because they were added without leave of the Court.

The Court does not find the addition of factual material supporting Plaintiff's claim of discrimination impertinent or scandalous. Plaintiff's new paragraphs in Count I merely provide additional factual context to an already known allegation.

However, Plaintiff did add a new charge in the form of a post-complaint allegation of retaliation. Specifically, Plaintiff argues that Defendant gave her an undeserved disciplinary write up in retaliation for filing her EEO complaint. (Doc. 39 at 20.) Defendant is correct that Plaintiff did not file a motion to amend her complaint to add this post-complaint allegation of retaliation. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Likewise, Plaintiff is accurate that generally this Court is encouraged to freely grant leave "when justice so requires." Fed. R. Civ. Pro. R. 15(a). However, nothing exempts Plaintiff from the requirement that she properly present a request for amendment. Moreover, Plaintiff cannot rely on the fact that her previously pled complaint contained claims of retaliation as it is impermissible to "present a separate theory for entitlement to relief under the same statutory basis alleged in the complaint," without the Court granting leave to amend. Orr v. Credit Prot. Ass'n, L.P., 2015 WL 439343, * 2 (M.D. Fla. Feb. 3, 2015) (citing Gadsby v. Am. Golf Corp. of Cal., 557 F. App'x 837, 839 (11th Cir. 2014)). Thus, this Court generally would not consider Plaintiff's post-

complaint allegations in the absence of amendment. However, if this Court were to construe Plaintiff's amended complaint as a motion to amend that was properly presented to the Court, Plaintiff's allegation would still fail for the reasons discussed on the merits below. Accordingly, Defendant's Motion to Strike Certain Paragraphs of Amended Complaint (Doc. 40) is **DISMISSED AS MOOT.**

Defendant has also filed a Second Motion for Partial Dismissal (Doc. 41) arguing that all of Plaintiff's charges of retaliation—not merely the charge based on the disciplinary write up—fail to state a claim. As discussed below, Defendant's Motion for Summary Judgment is granted as to all of Plaintiff's claims of retaliation. Accordingly, Defendant's Second Motion for Partial Dismissal (Id.) is **DISMISSED AS MOOT.**

B. Defendant's Motion for Summary Judgment

In order for a plaintiff to proceed on a retaliation claim, she must show that "(1) she engaged in an activity protected under Title VII; (2) she suffered an [materially] adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001)); see also Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). Proof of a causal connection requires

Plaintiff to show that "the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (quotations omitted) (overruled on other grounds). Once a plaintiff makes such a showing, the burden shifting analysis of McDonnell Douglas comes into play, requiring a defendant to show a non-retaliatory reason for its actions. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). If a defendant does provide evidence of a non-retaliatory reason for its actions, a plaintiff is then required to show that " 'the proffered reason really is a pretext for unlawful discrimination.' " Brooks, 446 F.3d at 1162 (quoting E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002)).

1. *Plaintiff's Annual Review*

Plaintiff argues that she received a lower performance appraisal score of "4" because she filed an EEO complaint. (Doc. 39 at 20.) Plaintiff initiated a grievance process challenging the score and subsequently received a higher score of "5." (Doc. 57 at 30.) Plaintiff's complaint here must fail. First, Plaintiff received a higher rating via a grievance process that she initiated following receipt of the allegedly lower marks. As a result, Plaintiff is foreclosed from relitigating that decision here. See Bond v. Roche, 2006 WL 50624, *3 (M.D. Ga.

2006) ("A federal employee may challenge alleged discrimination either through the negotiated grievance procedure or through the statutory procedures, but not through both.").

Second, the Eleventh Circuit has recognized that "[a] lower score on [a] performance evaluation, by itself, is not actionable under Title VII unless [Plaintiff] can establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities." Cain v. Geren, 261 F. App'x 215, 216 (11th Cir. 2008) (citing Brown v. Snow, 440 F.3d 1259, 1265 (11th Cir. 2006)). Here, Plaintiff has not made such a showing. The record contains no evidence that Plaintiff regularly received a score of "5" prior to filing her complaint. (Doc. 45, Attach. 5 at 5.) In fact, the evidence indicates that she regularly received awards of 4 or less. (Id.) Likewise, there is no evidence that Plaintiff was denied ordinary pay increases or the receipt of bonuses because of her rating. Finally, Plaintiff was neither placed on probation nor terminated as a result of her rating. Odom v. Holder, 2014 WL 1233709, *21 (N.D. Ala. Mar. 25, 2014) (holding that rating of "excellent" rather than "outstanding" was unlikely to dissuade reasonable employees when plaintiff received no adverse action, did not normally receive higher rating, and was not precluded from receipt of pay increases). As a result, Plaintiff may not sustain a charge of retaliation given her inability to provide

any evidence of adverse action stemming from her lowered performance review score.

Finally, even if Plaintiff provided evidence of an adverse action, Plaintiff's claim would still fail. Plaintiff has proffered no evidence that Ms. Bruce, who evaluated Plaintiff and gave her the allegedly lowered score, was aware of Plaintiff's claim of discrimination. Burch v. Coca-Cola Bottling Co. United, Inc., 608 F. App'x 916, 916 (11th Cir. 2015) ("Absent any evidence that the employees who made the decision to suspend [plaintiff] knew that [plaintiff] had made allegations of racial discrimination, a reasonable jury could not find that the decision to suspend [plaintiff] was in retaliation for those allegations." (citing Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (causal connection element requires plaintiff to demonstrate that the decision maker "was aware of the protected conduct at the time of the adverse employment action")). Because Plaintiff has not shown that Ms. Bruce was aware of Plaintiff's discrimination claim, Plaintiff cannot prove that there is a causal connection between her EEO claim and her lower end of year review score.

## 2. *Failure of Defendant to Appropriately Recognize Plaintiff for Award*

Plaintiff argues that Defendant did not recognize her for receiving a prestigious national award because she had filed an EEO complaint. (Doc. 39 at 18.) Even if Plaintiff can show that the lack of recognition for her receipt of a national award was based on her filing an EEO complaint, she cannot prove that what she experienced constituted an adverse employment action. "In a retaliation case, a materially adverse action is one that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Edwards v. Nat. Vision Inc., 568 F. App'x 854, 861 (11th Cir. 2014) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work." Burlington, 543 U.S. at 68 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "snubbing by supervisors and co-workers" are not actionable . . .)).

Here, the action that Plaintiff complains of is not an adverse employment action. It is merely a snub. While such a snub may be petty, it does not support a claim for retaliation.

See Edwards, 568 F. App'x at 862 (holding that assigning plaintiff cleaning duties, more patients than other employees, telling other employees not to talk to plaintiff, denying plaintiff's leave request, writing up plaintiff, and placing plaintiff on improvement plan were not materially adverse). Furthermore, when Plaintiff's co-workers asked about sending an office-wide email recognizing Plaintiff for the award, she stated "absolutely not." (Doc. 45, Attach. 5 at 3.) Given that Plaintiff decided to avoid an office-wide notification of her award, this Court is hard pressed to say that denial of any further recognition was an adverse employment action.

3. *Plaintiff's Chastisement for Removing Documents from ODAR*

Plaintiff also alleges that she received a reprimand letter in retaliation for her EEO complaint. (Doc. 39 at 20.) During discovery in this case, Plaintiff received a letter of caution when she removed ODAR documents from her office without approval. The letter reminded Plaintiff to not remove such documents from the office and specifically stated that it was not a disciplinary measure, although it did advise that such action might be taken in the future if the reminder was not heeded. (Doc. 45, Attach. 28.)

This type of letter cannot be considered an adverse employment action. The letter was non-disciplinary, clearly

stated that it would have no effect on Plaintiff's employment, and acted merely as a reminder to Plaintiff of the requirements of the office in which she worked. See, e.g., Copeland v. Ga. Dept. of Juvenile Justice, 2013 WL 1296778 *16 (M.D. Ga. Mar. 27, 2013) (no adverse action where no evidence that reminder "affected Plaintiff's salary, job status, or any other terms of her employment"). Additionally, there is no evidence that the reminder letter dissuaded Plaintiff from making or supporting a charge of discrimination. Morales v. Ga. Dep't of Human Res., Dep't of Human Res., Div. of Family & Children Servs., 446 F. App'x 179, 183-84 (11th Cir. 2011) (no adverse action where plaintiff's evaluations and reprimands did not dissuade plaintiff from making another discriminatory charge). As a result, this Court cannot conclude that Plaintiff has pled a prima facie case as to retaliation. See Tarmas v. Sec'y of Navy, 433 F. App'x 754, 762 (11th Cir. 2011) (holding that non-disciplinary letter was not adverse employment action where plaintiff did not receive any change in the terms or conditions of employment). Accordingly, Defendant's Motion for Summary Judgement as to Plaintiff's claims for retaliation pursuant to Title VII is **GRANTED**.

## CONCLUSION

Before the Court are Defendant's Motion to Strike Certain Paragraphs of Plaintiff's Amended Complaint (Doc. 40),

Defendant's Second Motion for Partial Dismissal (Doc. 41), Defendant's Motion for Summary Judgment (Doc. 45), Plaintiff's Motion for Oral Argument (Doc. 58), Defendant's Motion to Strike Plaintiff's Statement of Facts (Doc. 66), and Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Statement of Facts (Doc. 73). As discussed above, Defendant has withdrawn (Doc. 71) its Motion to Strike (Doc. 66) which is accordingly, **DISMISSED AS MOOT**. For the reasons discussed above the Court finds no reason to strike Defendant's response to Plaintiff's Statement of Facts. As a result, Plaintiff's Motion to Strike (Doc. 73) is **DENIED**.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**; and Defendant's Motion to Strike Certain Paragraphs of Amended Complaint (Doc. 40), Motion for Partial Dismissal (Doc. 41), and Plaintiff's Motion for Oral Argument (Doc. 58) are **DISMISSED AS MOOT**. This case will proceed to trial.

SO ORDERED this _30th_ day of March 2016.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA